CHRISTIAN, J.
delivered the opinion of the court.
There is no error in the decree of the Circuit court. In his petition the learned counsel for the appellant assigns for cause of error the following: ‘ ‘Whatever construction may be put upon the contract of sale between ^petitioner and said Dowdy, it was error in the Circuit court to scale the debt to its value in gold on the day when it fell due. If it was not a contract which according to the true understanding and agreement of the parties was to be fulfilled and performed in Confederate States treasury notes, then the court erred in applying the scale at all. If it was such contract then the court erred in scaling it to its gold value at the time it fell due, because it has been decided again and again by this court, that when the contract was the purchase price of property, then the measure of value is not gold, but the fair price of the property; and in this case it is proved that the property was worth on the day it was sold in good or par money from $900 to $1,000.”
The learned counsel is mistaken in point of fact, in stating that the scale was applied on the day when the debt fell due. In looking to the decree it will be found that the scale was applied at the date of the contract. So that the only questions to be considered are, first, was the contract one which was to be fulfilled and performed in Confederate States treasury notes, or one which was entered into with reference to that currency as a standard of value? And if so, second, whether it was error in the court to adopt the gold value of the currency as the standard, instead of adopting the value of the property as the “most just measure of recovery.”
The court is of opinion, that while the contract between the parties in this case, was not one which in terms “was to be fulfilled or performed in Confederate States treasury notes, ’ ’ yet it was a contract which was made and entered into with reference to that currency as a standard of value. At the time the contract was entered into *368 (December 1862), Confederate States treasury *notes constituted almost, if not altogether, the sole circulating medium of the country. It is not pretended by the agent who sold the house and lot, the subject of the contract, that the pajrment was to be made in gold. He says nothing was said about the kind of currency in which the contract was solvable, that he regarded the sale as one for good or par money, and that it was worth the price stipulated to be paid, in a sound currency. The purchaser received as the cash payment nearly two-thirds of the purchase money in Confederate currency, and no doubt would have received the whole if it had been tendered at that time. It is also proved that the property was offered for $800 in cash in 1860, and that no purchaser could be found at that price. These facts are pregnant to show that the contract was one which was entered into with reference to Confederate treasury notes as a standard of value, and that neither party contemplated a sale for gold or United States currency.
The remaining question, therefore, (the character of the contract being determined,) is whether it was error in the court below to scale the debt to its value in gold, or whether in this case it was the “most just measure of recovery” to take the value of the property as the standard of value. There is no fixed rule on this subject, nor can one be laid down by which every case is to be measured. E)ach case must rest on its own peculiar facts.
In Pharis v. Dice, 21 Gratt. 403, which was the first case decided construing the adjustment acts, this court held that “where the consideration of the contract is the borrowing and lending of Confederate currency, then the only mode of ascertaining its value is the reduction according to the scale of depreciation of the *nominal value to its real value in gold. But generally where the consideration of the contract is property sold and delivered, rented or hired, then the best mode of adjustment, and the best mode of ascertaining the value of the Confederate currency agreed to be paid, is the fair value of the property which that amount of Confederate currency bought, rented or hired at the time the contract was entered into.” This is, indeed, the general rule, and has been acted upon by this court in a number of cases. But, like every general rule, it has its exceptions, which have also been recognized by the court more than once. It may be observed that in all the cases in which the “property standard,” instead of the gold value has been adopted, the debtor has either proved to be in default in not tendering the Confederate currency on the day when, by the terms of the contract, his debt was payable, or there were other circumstances which would make it' inequitable to compel the creditor to receive the scaled value according to the gold standard of the Confederate currency, with reference to which the contract was made and entered into. Myers v. Whitfield, 22 Gratt. 780, and Stearns v. Mason, 24 Gratt. 484, were cases in which it was held as exceptions to the general rule laid down in Pharis v. Dice (supra), that it was, under the circumstances, the “most just measure of recovery” to apply the “gold standard” instead of the value of the property. In both of these cases, as in the case before us, a tender of Confederate money was made on the day or a few days after the contract was payable. And while the court held (as on the authority of those cases it must hold in this case), that the tender did not discharge the contract, because there had been such a depreciation as was not in contemplation of the parties at the time of the contract, and ^because there had been no agreement in terms to receive Confederate currency, regardless of the extent of its depreciation, it also held that in such a case the best mode of adjustment was to scale the debt by reducing its nominal value to its value in gold at the date of the contract. We think the principles decided in the cases above referred to must govern this case, and are therefore of opinion that there is no error in the decree of the Circuit court, and that the same be affirmed.
Decree affirmed.